## In re FINANCIAL NEWS NETWORK INC., Debtor.

## Howard JUSTUS, Appellant,

### v.

## FINANCIAL NEWS NETWORK INC., Appellee.

**Bankruptcy No. 91 B 10891 (FGC).**
**No. 92–Civ. 6620 (RPP).**

United States District Court,
S.D. New York.

July 23, 1993.

John Forest Hilbert, Carlsbad, CA, for appellant Howard Justus, as Trustee for Kaypro Corp.

Gibson, Dunn & Crutcher by Robert B. Krakow, New York City, for appellee Financial News Network Inc.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Appellant Howard Justus, as Trustee for Kaypro, Inc., (Kaypro), a Chapter 7 debtor, appeals from an order dated August 3, 1992 of the United States Bankruptcy Court for the Southern District of New York (the "order"), sustaining the objection of appellee Financial News Network Inc. (FNN) to Kaypro's proof of claim. Kaypro claims that FNN, a Chapter 11 debtor, violated the automatic stay in bankruptcy, 11 U.S.C. § 362,[1] by objecting to Kaypro's proof of claim without first obtaining relief from stay in Kaypro's bankruptcy proceeding. For the reasons set forth below, the order of the Bankruptcy Court is affirmed.

### BACKGROUND

In March 1990, Kaypro filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of California. In March 1991, FNN filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.

On April 15, 1991, Kaypro filed a proof of claim in the amount of $1,361,000 against FNN in FNN's bankruptcy proceeding in New York based on Kaypro's purchase of certain advertising spots from a third party, ICON International, Inc. (ICON). Kaypro asserted that it had a contractual right to receive certain advertising spots from FNN which it had purchased pursuant to a purchase agreement dated August 21, 1987 between Kaypro and ICON. ICON is purported to have purchased one thousand half-minute advertising slots on all FNN telecast, cablecast, radio broadcast, print media, program sales, merchandizing and signage programs, which ICON then sold to third parties, including Kaypro, pursuant to purchase agreements. The precise terms of the purchase agreement between Kaypro and ICON are immaterial to the resolution of this appeal. *See* Purchase Agreement, FNN Motion to Include Additional Items in Appellate Record, Exh. B. What is important is Kaypro's claim that its contractual right to the advertising spots constitutes property of the bankrupt estate under 11 U.S.C. § 541.

On December 12, 1991, FNN filed an objection to Kaypro's proof of claim. In its objection FNN contended that Kaypro's claim related to the purported purchase by Kaypro of advertising media credits from ICON pursuant to an agreement dated August 21, 1987 by and between Kaypro and ICON, that FNN was not a party to that agreement, and that, accordingly, FNN had no liability to Kaypro arising out of the sale of the advertising spots. Additionally, FNN contended that, pursuant to an order of the New York Bankruptcy Court, another party, the Consumer News and Business

---

1. With exceptions inapposite to this case, 11 U.S.C. § 362(a) provides in relevant part that a petition for involuntary bankruptcy

   operates as a stay, applicable to all entities, of—

   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

Channel Partnership ("CNBC"), had as-sumed all obligations for advertising media credits purchased by ICON. Accordingly, FNN asserted that any obligation arising from the sale of the advertising spots was an obligation of CNBC, not FNN.

In early 1992, Howard Justus was ap-pointed Chapter 11 Trustee for Kaypro in Kaypro's bankruptcy in California. On June 8, 1992, prior to the New York Bank-ruptcy Court's August 3, 1992 order, Kay-pro's bankruptcy was converted into a Chapter 7 liquidation proceeding, and Mr. Justus was appointed Chapter 7 Trustee for Kaypro's estate.

A properly noticed status conference re-garding FNN's objection to Kaypro's proof of claim was held by the New York Bank-ruptcy Court on July 22, 1992, which Mr. Justus did not attend. On August 3, 1992, the Bankruptcy Court entered an order sustaining FNN's objection to Kaypro's proof of claim and disallowing Kaypro's claim. The order stated the following:

> Having considered Debtor's Motion for Order Sustaining Objection to Kaypro's Proof of Claim filed by [FNN], a hearing on said Motion having been set for July 22, 1992 and claimant Kaypro Corpora-tion having failed to appear at said hear-ing to prosecute its claim, and the Court finding that good and sufficient grounds exist to grant Debtor's Motion, it is here-by ORDERED ... that: ... The proof of claim filed by Kaypro Corporation against FNN in the amount of $1,361,-000.00 ... is DISALLOWED with preju-dice.

FNN Motion to Include Additional Items in Appellate Record, Exh. A.

On August 10, 1991, Mr. Justus as Trust-ee for Kaypro filed a Notice of Appeal of the Bankruptcy Court's order sustaining FNN's objection and disallowing Kaypro's proof of claim based on the fact that FNN never sought relief from the automatic stay which was triggered by Kaypro's bankruptcy filing in March 1990.

## DISCUSSION

Kaypro argues that its contractual right to the advertising spots with FNN consti-tutes property of its bankrupt estate in California and that the New York Bank-ruptcy Court order sustaining FNN's objec-tion to Kaypro's proof of claim was an attempt by FNN to exercise control over Kaypro's estate. Kaypro maintains that because FNN failed to seek relief from the stay in effect in Kaypro's bankruptcy pro-ceedings in California, the New York Bank-ruptcy Court violated the automatic stay in California and was without jurisdiction to enter an order which impaired or eliminat-ed the contractual rights of Kaypro's es-tate.

■ "Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991) (citing *Cathey v. Johns–Manville Sales Corp.*, 711 F.2d 60, 62–63 (6th Cir.1983), *cert. denied*, 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986)). The bankruptcy court may grant such relief, after notice and a hear-ing, by "terminating annulling, modifying, or conditioning the stay," and thereafter, "judicial proceedings against the debtor may ... continue." *Id.* (citing, among oth-er authorities, *Cathey*, 711 F.2d at 62–63 and 11 U.S.C. § 362(d)).

■ However, the automatic stay provi-sion of section 362 " 'by it terms only stays proceedings *against* the debtor,' and 'does not address actions brought *by* the debtor which would inure to the benefit of the bankruptcy estate.' " *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C.Cir.1989) (per curiam) (quoting *Association of St. Croix Condo-minium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982) (emphasis in original)); *see Maritime Elec.*, 959 F.2d at 1205 ("within one case, actions *against* a debtor will be suspended even though closely related claims asserted *by* the debt-or may continue"); *Brown v. Armstrong*, 949 F.2d 1007, 1009–10 (8th Cir.1991).

■ Since section 362 mandates a stay only of litigation "against the debtor" designed to seize or exercise control over the property of the debtor, 11 U.S.C. § 362(a), it does not prevent entities against whom the debtor proceeds in an offensive posture—for example, by initiating a judicial or adversarial proceeding—from "protecting their legal rights." *Martin–Trigona v. Champion Federal Savings and Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989); *see In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir.) (automatic stay provision applicable only to actions against the bankrupt or to seizures of property of the bankrupt), *cert. denied*, 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987); *Price & Pierce Int'l Inc. v. Spicer's Int'l Paper Sales, Inc.*, 50 B.R. 25 (S.D.N.Y.1985).

■ The purpose behind the section 362 also indicates that the distinction between "offensive" and "defensive" actions of a party which affect the debtor's estate is an appropriate one to draw in determining the applicability of an automatic stay. The principal policy behind the automatic stay of section 362 is "to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors." *Martin–Trigona*, 892 F.2d at 577; *Maritime Elec.*, 959 F.2d at 1204; *see In Re Atreus Enter., Ltd.*, 120 B.R. 341, 346 (Bankr.S.D.N.Y. 1990) ("the automatic stay is intended as an umbrella to protect a debtor temporarily from the shower of law suits and collection efforts by creditors outside the bankruptcy court administering the debtor's case").

In objecting to Kaypro's proof of claim filed in the New York Bankruptcy Court, FNN acted in a defensive manner to protect its own legal rights and its own bankrupt estate. *See Martin–Trigona*, 892 F.2d at 577. FNN asserted no claim against Kaypro which could be construed as an active attempt to recover property from Kaypro or an act seeking to gain control or possession of any contract cause of action by Kaypro against FNN. This case is therefore to be distinguished from cases in which creditors of the bankrupt estate or other third parties initiate judicial proceedings or adversary proceedings in an active attempt to circumvent the automatic stay and control the property of the bankrupt estate. *See, e.g., Maritime Elec.*, 959 F.2d at 1206 (conversion claim filed against debtor in district court subject to automatic stay, but debtor's counterclaims and third party claims against non-bankrupt held not subject to automatic stay); *In re MCEG Productions, Inc.*, 133 B.R. 232, 233–35 (Bankr.C.D.Cal.1991) (creditor's filing of petition in state court for damages and injunctive relief to enjoin sale, transfer or acquisition of debtor was "thinly disguised attempt[ ] to circumvent the automatic stay").

■ In sum, both the language and purpose of section 362 indicate that the automatic stay in effect in the Bankruptcy Court for the Southern District of California did not preclude the New York Bankruptcy Court from sustaining FNN's objection to Kaypro's proof of claim filed in New York Bankruptcy Court. Accordingly, the Court finds that the order of the Bankruptcy Court for the Southern District of New York sustaining the objection to Kaypro's proof of claim was not a violation of the automatic stay in place in the Bankruptcy Court for the Southern District of California, and the Bankruptcy Court in New York exercised its appropriate jurisdiction to disallow Kaypro's proof of claim.

### CONCLUSION

For the reasons set forth above, the August 3, 1992 order of the United States Bankruptcy Court for the Southern District of New York is affirmed.

IT IS SO ORDERED.